IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA


RANDAL C. BREVER, for the use and benefit )
FEDERATED KAUFMANN FUND,                  )
                                          )
            Plaintiff,                    )
                                          )
      v.                                  )      **2:04cv855**
                                          )      **Electronic Filing**
FEDERATED EQUITY MANAGEMENT               )
COMPANY OF PENNSYLVANIA,                   )
FEDERATED SECURITIES CORP.,                )
FEDERATED ADVISORY SERVICES               )
COMPANY, FEDERATED GLOBAL                 )
INVESTMENT MANAGEMENT CORP.,              )
and FEDERATED INVESTMENT                  )
MANAGEMENT COMPANY,                       )
INSURANCE COMPANY,                        )
                                          )
            Defendants.                   )


## OPINION


Randall Brever ("Brever") commenced this action on February 25, 2004, by filing a

complaint in the Middle District of Florida asserting claims against defendants pursuant to

§§36(b) and 12(b) of the Investment Company Act of 1940 ("ICA"), as amended, 15 U.S.C.

§§80a-35(b) and 80a-12(b).  The gravamen of the complaint is that defendants charged excessive

fees and retained compensation for advisory services rendered without appropriate reduction for

economies of scale in violation of the fiduciary duty owed to the Federated Kaufmann Fund

("Kaufmann") and its shareholders.[1]  On March 12, 2004, an amended complaint was filed in the

Middle District of Florida adding plaintiff, Walter Neit, and asserting claims under the same

sections of the ICA on behalf of the Federated Capitol Income Fund.  On June 1, 2004, the action

---

[1]Kaufmann consists of a diversified portfolio of Federated Equity Funds (a registered open-ended
management investment company or "mutual fund") established under Massachusetts law.  It is
sponsored and managed by Federated Investors, Inc., and its subsidiaries, including the
defendants in this action.

was transferred to this district pursuant to a joint motion by the parties.[2]   Presently before the court is plaintiffs' motion for leave to file an amended complaint and substitute plaintiffs Jules Cooper, James Monahan, Nina Monahan, and Leonard Burres for Brever as shareholders of Kaufmann.  For the reasons set forth below, the motion will be granted in part and denied in part.

Brever was a shareholder of Kaufmann when the action was commenced on February 25, 2004. Brever sold his shares in the fund, however, on April 30, 2004.  As a result, Brever ceased to be a shareholder of the fund at that time and divested himself of standing to maintain an action under §36(b) of the ICA.  See Weiner v. Winters, 50 F.R.D. 306, 310 (S.D. N.Y. 1970) (shareholder status necessary to maintain an action on behalf of mutual fund); Kaufmann v. Dreyfus Fund Inc., 434 F.2d 727, 734-36 (3d Cir. 1970) (stockholder relationship necessary to acquire standing to sue on behalf of mutual fund).  Neit and the proposed substitute plaintiffs do not take issue with Brever's inability to maintain an action against defendants on behalf of Kaufmann on or after May 1, 2004.  They do, however, contend that the remedial purposes of §36(b) and Federal Rule of Civil Procedure 15(c) permit the substitute plaintiffs to step into the shoes of Brever and continue to maintain the causes of action initially commenced by him. Defendants contend that permitting the substitute plaintiffs to maintain the claims for damages initiated by Brever would impermissibly expand the remedial relief authorized by Congress without a proper basis for doing so.

Permitting substitute plaintiffs to maintain claims under the ICA for the same remedial relief applicable to Brever's initial claims would effectively toll the substantiative damage limitation contained in §36(b) (3) without an equitable basis warranting such relief.  In addition,

---

[2]Federated Investors, Inc. ("Federated"), is based in Pittsburgh, Pennsylvania, and is one of the largest investment management companies in the United States.  It sponsors and manages forty-four registered investment companies that are comprised of more than one hundred thirty different portfolios of security investments.  The instant action is one of five cases pending before this court involving the investment services Federated and/or its subsidiaries have provided to various mutual funds under their management.  An order of stay has been entered in all actions in order efficiently coordinate the development of these related actions.

because the damage remedies available to substitute plaintiffs necessarily cover fee arrangements and services that are distinct from those initially brought under review by Brever's claims, the substitute plaintiffs claims arise out of separate transactions and occurrences  and therefore their effort to invoke relation back doctrine under Rule 15 is unavailing.  Accordingly, the court will grant plaintiffs' motion to amend to the extent it seeks to add substitute plaintiffs to the litigation in order to pursue claims under the ICA utilizing the same theories of liability initially advanced by Brever, but the substitute plaintiffs' ability to recover damages will be limited in accordance with the mandate of §35(b) (3).

Section 36(b) of the ICA imposes a fiduciary duty on an investment advisor of a mutual fund and provides a limited cause of action "with respect to the receipt of compensation for services" paid by the mutual fund.  15 U.S.C. § 80a-35(b).  Thus, "investment company advisors owe shareholders in investment companies a fiduciary duty with respect to determining and receiving their advisory fees."  <u>Green v. Fund Asset Management, L.P.</u>, 286 F.3d 682, 685 (3d Cir. 2002).[3]

---

[3]The text of the statute provides in pertinent part:

> For the purposes of this subsection, the investment advisor of a registered investment company shall be deemed to have a fiduciary duty with respect to the receipt of compensation for services, or of payments of a material nature, paid by such registered investment companies, ... to such investment advisor or any affiliated person of such investment advisor.  An action may be brought under this subsection ... by a security holder of such registered investment company on behalf of such company, and against such investment advisor, or any affiliated person of such investment advisor, ... for breach of fiduciary duty in respect of such compensation or payments paid by such registered payment company ... to such investment advisor or person.

15 U.S.C. § 80a-35(b).  Actions for breach of this fiduciary duty may only be brought on behalf of the fund by the Securities and Exchange Commission ("SEC") or by a security holder of the particular mutual fund in question.  <u>Daily Income Fund v. Fox</u>, 464 U.S. 523 (1984).

Congress promulgated the ICA in order to address "its concern with 'the potential for abuse inherent in the structure of investment companies.'" Daily Income Fund, 464 U.S. at 536 (quoting Burks v. Lasker, 441 U.S. 471, 480 (1979)).  Because a mutual fund is typically created and managed by an external organization known as an investment advisor and the investment advisor typically supervises the daily operation of the fund and selects affiliated persons to serve on the company's board of directors, Congress recognized that "the relationship between investment advisors and mutual funds is fraught with potential conflicts of interests." Id.  In an effort to minimize the existence and impact of such conflicts, Congress established a statutory scheme that regulates the principal transactions between an investment company and its advisors, limits the inter-relationship between the board of directors and the fund's advisors and requires agreements for investment advice to be reduced to a written contract and approved by the directors and  shareholders of the fund.  Id. at 536-37 (citing various subsections of 15 U.S.C. § 80a).  After these initial measures proved to be insufficient in regulating fee arrangements for investment advice, Congress amended the ICA in 1970 to heighten the judicial overview of fee agreements between a mutual fund and its investment advisors.  Id. at 539.  In devising a new method for testing management compensation, Congress imposed a "fiduciary duty" on investment advisors and permitted either the SEC or a shareholder to sue on the grounds that the mutual fund's fees constitute "a breach of fiduciary duty."  Id. (citing legislative history to 1970 Amendments).  In the process, Congress rejected a proposal that would have given the mutual fund the ability to enforce claims for breach of fiduciary duty.  Id.[4]

---

[4]This was in part because the SEC had concluded through various studies that the ICA's provisions for independent directors and approval of adviser contracts by the mutual fund had actually frustrated effective challenges to advisor fees.  Id. at 539-40.  Consequently, the Senate Report accompanying the 1970 Amendments concluded that while shareholder and directorial approval of advisor contracts are to be given serious consideration in the context of a §36(b) action, such approval is not to be deemed controlling in determining whether a particular fee constitutes a breach of fiduciary duty.  Id. at 540 (quoting Senate Report).

4

The fiduciary duty imposed by §36(b) is significantly more circumscribed than the duties imposed by a fiduciary relationship recognized at common law. Green, 286 F.3d at 685. The 1970 Amendments were designed "to provide a means by which the Federal courts can effectively enforce the federally-created fiduciary duty with respect to management compensation." Id. (emphasis and citations omitted). Under this scheme the mere showing of a conflict of interest in the mutual fund fee arrangement is insufficient; a shareholder must allege an actual breach of fiduciary duty with respect to the receipt of compensation for advisory services rendered. Id. at 684-85; Fox, 464 U.S. at 534. In general, a violation of §36(b) occurs where the advisor/manager has received a fee that is so disproportionately large that it bears no reasonable relationship to the services rendered and cannot reflect the product of arm's-length bargaining. Gartenberg v. Merrill Lynch Asset Mgmt., Inc., 694 F.2d 923, 928 (2d Cir. 1982).

Another concern of Congress in formulating the 1970 Amendments was to protect investment advisors and their affiliates from open-ended litigation and nuisance suits. H. R. Rep.No. 1382, 91st Cong., 1st Sess. 8, 38 (1970); Krinsk v. Fund Asset Management, Inc., 1986 U.S. Dist. Lexis 25691 (S.D. N.Y. 1986). The amendments thus contained a number of limitations on the fiduciary duty imposed by §36(b). Green, 286 F.3d at 685. These include: damages or other relief can be entered only against a recipient of the fee or compensation agreement; any award of damages is limited to actual damages resulting from the breach and shall not in any event exceed the actual compensation or fees received by the recipient; and damages are recoverable only for one year prior to the commencement of the action. 18 U.S.C. §80a-35(b) (3); Green, 286 F.3d at 685.

The limitations placed on §36(b) actions reflect the congressional intent to establish a means by which recently awarded management agreements can be policed, tested and modified or rescinded under federal court review. And the ability to maintain suits for such relief is provided to the SEC or a shareholder, both of which are unable to exert direct control over management decisions and advisory fee agreements. But a shareholder's ability to police and

5

challenge any such agreement through an award of damages is specifically limited to one year by operation of the statute. Thus, a shareholder is able to review each fee arrangement entered by a mutual fund and challenge the propriety of that agreement to the extent it smacks of self dealing and/or disproportionate compensation. Through this approach Congress sought to advance the twin goals of providing an appropriate check on potential conflicts of interest in setting fee arrangements and limiting the potential for increased costs of litigation and the abusive use of lawsuits.

It is clear that the above backdrop precludes an expansion of the statute's one year damage limitation under the circumstances presented. In effect, substitute plaintiffs seek to toll the statute of limitations essentially on the ground that a prior shareholder challenged previous fee arrangements but failed to see the challenge through to fruition. The statute contains no provision that suggests or implies that such an approach was contemplated by Congress or would be consistent with the statutory approach it ultimately adopted.

Moreover, the record fails to contain any facts or circumstances that would warrant equitable tolling under traditional grounds. The federal doctrine of "equitable tolling stops [a] statute of limitations from running when the date on which the claim accrued has already passed." Lake v. Arnold, 232 F.3d 360, 370 (3d Cir. 2000) (citing Oshiver v. Levin, Fishbein, Sedran & Berman, 38 F.3d 1380, 1387 (3d Cir. 1994)). "Although the Supreme Court has repeatedly recognized the equitable tolling doctrine, it also has cautioned that" it should be sparingly utilized. Seitzinger v. Reading Hospital & Medical Center, 165 F.3d 236, 240 (3d Cir. 1999); United States v. Midgley, 142 F.3d 174, 179 (3d Cir. 1998).

Equitable tolling generally is appropriate in three scenarios: (1) where a defendant has actively mislead the plaintiff with respect to his or her cause of action; (2) where the plaintiff has been prevented from asserting a claim as a result of other extraordinary circumstances; or (3) where the plaintiff has asserted his or her claim in a timely manner but in the wrong forum. Lake, 232 F.3d at 370 n. 9. Extraordinary circumstances will be recognized where the plaintiff

"could not by the exercise of reasonable diligence have discovered essential information bearing on his [or her] claim." Moody v. Kearney, 380 F. Supp.2d 393, 398 (D. Del. 2005) (quoting Kada v. Baxter Health Care Corp., 920 F.2d 446, 452 (7th Cir. 1990)).

The nature of substitute plaintiffs' claim and the circumstances presented by Brever's abandonment of his claim preclude equitable tolling. There is no basis in the record to infer that defendants actively misled substitute plaintiffs with respect to the information pertaining to the fee agreements entered at any time before one year prior to the time they moved to enter this litigation. It must be assumed that substitute plaintiffs received the same information that led Brever to initiate his claim under § 36(b). Similarly, substitute plaintiffs have not asserted any basis to support the premise that they were prevented from asserting a claim under § 36b or joining in Brever's action in a timely manner. Finally, substitute plaintiffs do not contend that they timely asserted their claims in an inappropriate forum. In short, they merely posit that by not being able to resurrect Brever's cause of action, defendants will be permitted to profit from their own wrongdoing. But this argument begs the question and at the very least is unavailing where each substitute plaintiff had equal access to all relevant information and could have commenced a §36(b) action challenging the same fee agreements brought into focus by Brever's original complaint – but simply chose for whatever reason not to do so.

Substitute plaintiffs' attempt to invoke the "relation back" doctrine recognized pursuant to Rule 15(c) (3) is misplaced for similar reasons. "Rule 15(c) can ameliorate the running of the statute of limitations on a claim by making the amended claim relate back to the original, timely filed complaint." Singletary v. Pa. Depart. of Corrections, 266 F.3d 186, 193 (3d Cir. 2001). Rule 15(c) permits an amendment to a complaint to relate back to the date of the original pleading when (1) relation back is permitted by the law that supplies the statute of limitations applicable to the action; (2) the claim or defense arose out of the transaction or occurrence set forth in the original pleading; or (3) the amendment changes a party and the claim or defense arose out of a transaction or occurrence set forth in the original pleading. When relation back is

7

dependent on subsection (3), the new party also (a) must have received notice of the suit within the period for service set forth in Rule 4(m), (b) must not be prejudiced in maintaining a defense, and (c) should have known that, but for a mistake in identity, the claim would have been brought against it. Brzozowski v. Correctional Physician Services, Inc., 360 F.3d 173, 180 (3d Cir. 2004). In order for a claim "to relate back, all three conditions specified in Rule 15(c) (3) must be satisfied." Nelson v. County of Allegheny, 60 F.3d 1010, 1014 (3d Cir. 1995).

The principles outlining the circumstances under which relation back will be permitted are crafted in a manner designed to preserve the protection afforded by the applicable statute of limitations. Id. Thus, "where the effort is to add new parties, courts apply subparagraph (3), and inquire whether defendants (A) received such notice that they will not be prejudiced in maintaining a defense on the merits and (B) knew or should have known that, but for a mistake concerning the identity of the property party, the action would have been brought with the original claims." Id. Although the relation back of amendments as expressed in Rule 15(c) specifically addresses only scenarios involving a change in a defendant or the adding of a new defendant, the approach therein "extends by analogy to amendments changing plaintiffs." Id. at 1014 n.7 (quoting Advisory Committee Note to 1966 Amendment to Rule 15(c)). The notice inquiry is designed to eliminate the prejudice that would result from having to assemble evidence and construct a defense after a claim has become stale. Id. at 1014-15. The requirement to demonstrate a mistake concerning the identity of the proper party is concerned with protecting a defendant's interest in repose where a dilatory complainant has simply sat on his or her rights and seeks to invoke the rule in an effort to perform an end-run around the statute of limitations. Id. at 1015.

Substitute plaintiffs' effort to invoke the relation back doctrine embodied in Rule 15(c) fails on many levels. First, any claim they are entitled to assert under §36(b) presumably involves management and advisory fee agreements that are separate and distinct from those encompassed within Brever's initial complaint. Thus, as a result of the substantive limitations on damages explicitly set forth in §36(b), substitute plaintiffs' claims involve different transactions

and occurrences then those challenged by the Brever complaint. Therefore, absent the end result of the relation back doctrine, substitute plaintiffs' §36(b) claim fails to satisfy the requirements of Rule 15(c) (2), which is an absolute prerequisite for the application of a change in parties pursuant to Rule 15(c) (3). See Garvin v. City of Philadelphia, 354 F.3d 215, 222 (3d Cir. 2003) ("in order to change the party or the naming of the party against whom claims are asserted, both Rule 15(c) (2) and (c) (3) must be satisfied.") (quotation marks and citations omitted); St. Paul Mercury Ins. Co. v. Circuit Court of Craighead County, 78 S.W.3d 584, 589 (Ark. 2002) (Where an amended complaint substitutes out all original plaintiffs and puts in their place entirely new plaintiffs, it is not an amendment under Rule 15 (c), but instead a new lawsuit.). To apply Rule 15(c) in that manor would create substantive rights by application of a procedural rule and thus run afoul of the Rules Enabling Act.

Morever, the United States Court of Appeals for the Third Circuit specifically has held that in order to avail themselves of the relation back doctrine set forth in Rule 15(c), substitute plaintiffs must show that defendants knew before the expiration of the limitations period in question that "but for a mistake, they would have been sued directly by these plaintiffs." Nelson, 60 F.3d at 1015. Otherwise, the relation back doctrine would be without appropriate limits. Tardy plaintiffs would be permitted to benefit from the diligence of other claimants and the corresponding defendant's liability would be increased geometrically, subjecting the defendant to the need to formulate complex defense strategies long after the applicable statute of limitations has run. Id. (quoting Leachman v. Beach Aircraft Corp., 694 F.2d 1301, 1309 (D.C. Cir. 1982)).

Substitute plaintiffs had the same period of time in which to file a §36(b) claim challenging the management and advisory fee agreements performed within one year prior to February 25, 2004. They chose not to assert their individual shareholder claims challenging those transactions until February 24, 2005. Having sat on their rights, Rule 15(c) does not provide them with an avenue to "perform an end-run around the statute of limitation that bars their claims." Nelson, 60 F.3d at 1015. Accordingly, to the extent substitute plaintiffs seek to have their claims in the amended complaint relate back to separate and distinct transactions

9

challenged by Brever's original pleading by operation of Rule 15(c), their motion for leave to amend must be denied.

For the reasons set forth above, substitute plaintiffs will be granted leave to amend pursuant to Rule 15(a) to advance the §36(b) claims set forth in their amended complaint. The motion will be denied to the extent it seeks to have those claims relate back to fee and management agreements performed prior to one year before they sought leave to become substitute plaintiffs for Randall C. Brever. An appropriate order will follow.

_David Stewart Cercone_
David Stewart Cercone
United States District Judge

cc:    Guy M. Burns, Esquire
       Jonathan S. Coleman, Esquire
       Becky Ferrell-Anton, Esquire
       Audrey B. Rauchway, Esquire
       Johnson, Pope, Bokor
          Ruppel & Burns, L.L.P.
       403 East Madison Street, Suite 400
       Tampa, FL 33602

       Michael Brickman, Esquire
       James C. Bradley, Esquire
       Nina H. Fields, Esquire
       Richardson, Patrick, Westbrook
          & Brickman LLC
       174 E. Bay Street
       Charleston, SC 29401

       Ellen M. Doyle, Esquire
       Malakoff, Doyle & Finberg
       200 Frick Building
       Pittsburgh, PA 15219

       Gretchen Freeman Cappio, Esquire
       Lynn Lincoln Sarko, Esquire
       Michael D. Woerner, Esquire
       Tana Lin, Esquire
       Keller Rohrback
       1201 Third Avenue
       Suite 3200
       Seattle, WA 98101-3052

10

David J. Bird, Esquire
Perry A. Napolitano, Esquire
Roy W. Arnold, Esquire
Thomas L. Allen, Esquire
Casey C. Dick, Esquire
Reed Smith
435 Sixth Avenue
Pittsburgh, PA 15219-1886

.